ANITA P. ARRIOLA, ESQ.
JOAQUIN C. ARRIOLA, JR., ESQ.
JACQUELINE T. TERLAJE, ESQ.
ARRIOLA, COWAN & ARRIOLA
259 MARTYR STREET, SUITE 201
HAGATNA, GUAM 96910
Telephone: (671) 477-9731/33
Telecopier: (671) 477-9734



FILED
DISTRICT COURT OF GUAM
MAR 14 2005
MARY L.M. MORAN
CLERK OF COURT

Counsel for Plaintiff
LOUIS VUITTON MALLETIER

## UNITED STATES DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| LOUIS VUITTON MALLETIER | ) | CIVIL CASE NO. **05-00010** |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF LOUIS VUITTON'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, AND ORDER SEALING FILE** |
| vs. | ) | |
| LIN'S JEWELRY CO. and DOES I THROUGH XX, | ) | |
| Defendants. | ) | |

### INTRODUCTION

This is an action for trademark infringement, trademark counterfeiting, false designation of origin and unfair competition against defendant Lin's Jewelry Company ("Lin's Jewelry"), which is selling, offering for sale and distributing jewelry and other goods falsely bearing the registered trademarks of plaintiff Louis Vuitton Malletier ("Louis Vuitton"). The goods sold by defendant are inferior imitations and counterfeit copies of the high quality merchandise sold by plaintiff under its federally registered trade names and trademarks (hereinafter referred to as "the Counterfeit Goods"). Defendant has admitted selling "copies" of plaintiff's genuine merchandise. D. Perez Affid.

Plaintiff's ex parte request for a temporary restraining order, seizure order, order to show cause for preliminary injunction, and order sealing file is made to prevent irreparable harm to

ORIGINAL

plaintiff while this action remains pending. Without ex parte entry of these orders, defendant will simply dispose of or hide the counterfeit goods and related business records and it will disclaim knowledge of the traffickers of the counterfeit goods. Consequently, the ex parte orders requested by plaintiff must be issued without delay.

## FACTUAL BACKGROUND

### A. History of the Plaintiff's Trademarks.

Louis Vuitton has been a master trunk maker in Paris since 1854. J. Paulino Affid. It is a prestigious firm whose products have always been acknowledged as the "epitome of refinement." Id. The products of Louis Vuitton are renowned for their unique craftsmanship and the highest standards of quality. Id. They have been sold and distributed throughout the United States and the world under one or more of Louis Vuitton's trademarks, including those attached to the Verified Complaint filed herein. Id. Louis Vuitton has been and now is producing, advertising, offering for sale and selling various merchandise bearing one or more of its trademarks, including trunks, luggage, travel accessories, handbags, small leather goods such as keycases, wallets, cigarette cases, belts, apparel, scarves, jewelry, and various garments and other merchandise, in interstate commerce. Id. Using its trademarks, Louis Vuitton has established an outstanding reputation throughout the United States and the world as a supplier of high quality fashionable travel merchandise. Id.

The consistent high quality of Louis Vuitton's merchandise is known throughout the United States and the world. J. Paulino Affid. Plaintiff and its worldwide retail stores carefully monitor the manufacturing quality of its products and virtually all aspects of advertising, marketing and promotion of such products. Id. As a result of plaintiff's substantial sales, advertising, and high quality standards, plaintiff's trademarks have acquired considerable value. Id. The consuming

public identifies Louis Vuitton as the source of products to which the marks are applied and that the products bearing its marks are of high quality and workmanship. Id.

**B.      Investigation of Lin's Jewelry Stores.**

   **1.      Lin's Jewelry Store at the Micronesia Mall.**

On February 20, 2005, Delores Perez ("Perez"), an administrative assistant at Louis Vuitton Guam, went to Lin's Jewelry store at the Micronesia Mall (Cinema Wing). D. Perez Affid. She saw three different bracelets, each bearing the Louis Vuitton trademark. Id. One bracelet was originally offered for sale for $700.00, but Perez purchased the bracelet for $300.00. Id. Perez returned to the store on February 23 and was told by the salesperson who waited on her, Zeny, that the bracelet she had purchased was a "copy." Id.

Several days later, on February 28, 2005, Maerica Dizon visited the same store. M. Dizon Affid. Dizon saw three identical bracelets in a display case marked with the Louis Vuitton trademark. Id. The bracelet had a price tag of $790.00, but Dizon purchased the bracelet for $330.00. Id. The sales associate, Zeny, told her that the bracelet was "not real." Id.

   **2.      Lin's Jewelry Store at East Hagatna.**

On February 28, 2005, Yvette Terlaje visited the Lin's Jewelry store in East Hagatna. Y. Terlaje Affid. Terlaje saw a total of two bracelets and three charms all marked with the "LV" trademark. Id. Terlaje expressed interest in one of the bracelets, which had a ticket price of $1,138.00, and purchased the bracelet for $409.00. Id.

   **3.      Lin's Jewelry Store at JP Superstore kiosk, Guam Plaza Hotel.**

On March 7, 2005, Perez went to the Lin's Jewelry store located at the JP Superstore kiosk, Guam Plaza Hotel in Tumon. D. Perez Affid. Perez saw a bracelet with the "LV" trademark that had a ticket price of $1,338.00. Id. Perez bought the bracelet for $450.00. Id.

-3-

Case 1:05-cv-00010   Document 3   Filed 03/14/2005   Page 3 of 15

C.  **Defendant's Illegal Sale of Counterfeit Goods.**

All of the items purchases at the Lin's Jewelry stores are counterfeit. J. Paulino Affid. Lin's Jewelry is not an authorized retailer, distributor, or dealer of Louis Vuitton merchandise. Id. This action has been instituted to remedy what is tantamount to the theft of a substantial portion of plaintiff's income, reputation and goodwill by the sale of unauthorized, counterfeit merchandise. Lin's Jewelry is presently offering for sale, distributing and/or selling goods practically identical in appearance, though not in quality, to the products distributed by Louis Vuitton. D. Perez Affid.; M. Dizon Affid.; Y. Terlaje Affid.; J. Paulino Affid. The goods sold by defendant bear trademarks identical to those used by plaintiff on genuine Louis Vuitton merchandise. Id.

## ARGUMENT

I.  **AN IMMEDIATE EX PARTE TEMPORARY RESTRAINING ORDER IS NECESSARY AND APPROPRIATE TO PREVENT IRREPARABLE HARM TO PLAINTIFF.**

A.  <u>A Temporary Restraining Order Should Be Issued Without Notice to Defendant.</u>

15 U.S.C. § 1116 (the "Lanham Act") authorizes this Court to grant injunctions "... to prevent the violation of right" of the owner of a mark. This Court is authorized to issue a restraining order ex parte to protect the rights of the trademark owner. 15 U.S.C. § 1118. Fed. R. Civ. P. 65(b) allows a temporary restraining order to be issued without notice if it appears from affidavits or the verified complaint that immediate or irreparable injury will result to the applicant before the adverse party can be heard in opposition and the applicant's attorney certifies to the court in writing the reasons supporting the claim that notice should not be required. L.R. 7.1 also provides that the Court may waive the notice requirement of L.R. 7.1(j)(1) if "the interests of justice" require that notice not be given. Plaintiff fulfills all of the requirements under each of the foregoing authorities. See

Verified Complaint; D. Perez Affid.; M. Dizon Affid.; Y. Terlaje Affid.; J. Paulino Affid.; A. Arriola Affid.

It is well established law in this Circuit that a plaintiff may obtain a temporary restraining order and preliminary injunction against trademark infringement and unfair competition. Ross-Whitney Corporation v. Smith-Kline & French Laboratories, 207 F.2d 190 (9th Cir. 1953). It is also well established in this circuit that issuance of a temporary restraining order is an appropriate procedure to be followed in the case of irreparable injury from the use of a trademark. This Court has been particularly vigilant of the rights of trademark holders and has issued immediate ex parte temporary restraining orders to protect those rights.[1]

In order to obtain a temporary restraining order, plaintiff must establish that: (1) it has a strong likelihood of success on the merits; (2) an adequate remedy at law is unavailable; (3) plaintiff will suffer irreparable harm if the order is not granted; (4) the balance of hardships between plaintiff and defendant weighs in favor of plaintiff; and (5) the public interest is served by issuance of an injunction. Regents of University of California v. American Broadcasting Companies, Inc., 747 F.2d 511, 515 (9th Cir. 1984). Plaintiff meets all of these criteria.

///

///

---

[1] Louis Vuitton Malletier v. Hana Trade Corporation dba Honolulu Gift Shop aka U.S.A. T-Shirts and Gift Items, et al., Civil Case No. 03-00013 (D. Guam) (Order dated October 17, 2003); Louis Vuitton Malletier v. Salgado, Civil Case No. 03-00001 (D. Guam) (Orders dated January 8, 2003 and January 13, 2003); Louis Vuitton Malletier and Chanel, Inc. v. Suzie H.C. Yim, et al., Civil Case No. 00-00069 (D. Guam) (Order dated December 19, 2000); Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al., Civil Action No. CIV93-00053; Hunting World, Inc. v. Jimar's Investment Co., et al., Civil Action No. CIV92-00050. (D. Guam) (Order dated August 17, 1992); Louis Vuitton v. Ok Cha Sun, et al., CV89-00061 (D.Guam) (Order dated October 27, 1989); Louis Vuitton v. Marina Pizarro, CV89-00060 (D.Guam) (Order dated October 27, 1989); Louis Vuitton v. Jimar's Investment Co., et al., CV89-00059 (D.Guam) (Order dated October 27, 1989); Chanel v. Baro's French Enterprise, et al., CV89-0048 (D.Guam) (Order dated August 30, 1989); Reebok v. CHC, Inc., et al., CV88-00030 (D.Guam) (Order dated June 17, 1988).

B. **Plaintiff Has a Strong Likelihood of Success on the Merits.**

There are two basic elements in a trademark infringement action. First, a plaintiff must prove the validity of the mark it seeks to protect. Jockey Club, Inc. v. Jockey Club of Las Vegas, 595 F.2d 1167, 1168 (9th Cir. 1979). Second, the plaintiff must prove that the use of a similar mark by the defendant is likely to cause confusion in the market place concerning the source of the differing products. Id.

Louis Vuitton's marks are registered in the U.S. Patent and Trademark Office. See Exhibits A - G, attached to Verified Complaint. Plaintiff's registered trademarks are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b) (emphasis added); see Pure Food Products, Inc. v. American Bakeries Co., 356 F. Supp. 701, 707, 177 U.S.P.Q. 599 (N.D. Ill. 1973) (plaintiffs' certificates of registration are *prima facie* evidence of ownership). Louis Vuitton has not authorized defendant's use of, or sale of items bearing its registered trademarks. J. Paulino Affid. Plaintiff therefore satisfies the first element of a trademark infringement action.

Under the second element, plaintiff must prove that there is a likelihood of confusion as to the identity or association between plaintiff and defendant due to their common use of the trade name and trademark. Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443, 205 U.S.P.Q. 981 (9th Cir. 1980).[2] In determining whether the likelihood of confusion exists, the Ninth Circuit has articulated a five-factor test: (1) the similarity of the marks; (2) evidence of actual

---

[2] This is true for both federal counts alleged in plaintiff's Verified Complaint under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1202 (9th Cir. 1979) ("ultimate test is whether the public is likely to be confused or deceived by the similarity of the marks"). Actual confusion need not be shown to prevail in a Lanham Act trademark infringement suit; the likelihood of confusion is sufficient. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875, 230 U.S.P.Q. 831 (2d Cir. 1986).

-6-

confusion; (3) relationship between plaintiff's and defendant's goods and channels of trade; (4) the strength of plaintiff's marks; and (5) defendant's intent in adopting plaintiff's marks. Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 782 F.2d 1508, 1509 (9th Cir. 1986).

Here, the marks on the goods sold by Lin's Jewelry are virtually indistinguishable from those found on the merchandise produced by Louis Vuitton as the items purchased at defendant's stores bear the distinctive "LV" trademark. D. Perez Affid.; M. Dizon Affid.; Y. Terlaje Affid.; J. Paulino Affid. See Polo Fashions, Inc. v. Diebolt, Inc., 634 F. Supp. 786, 795, 229 U.S.P.Q. 924 (D. Kan. 1986) (substantial likelihood of confusion was caused by similarity of embroidered polo logo and label mark on counterfeit shirts); Vuitton et Fils S.A. v. Crown Handbags, 492 F.Supp. 1071, 1076 (S.D.N.Y. 1979), aff'd. 622 F.2d 577 (2d Cir. 1980) (defendants' sale of products and trademarks exactly mimicking plaintiffs' results in confusion and deception the Lanham Act was designed to prevent).

Next, use of the Louis Vuitton trademarks by Lin's Jewelry has already led to confusion and is persuasive proof that future confusion is likely. J. Paulino Affid. Although the genuine Louis Vuitton merchandise is of vastly superior quality to the counterfeit items sold at Lin's Jewelry, the items are similar enough in nature and appearance that the typical buyer will mistake the counterfeit goods for the genuine items. Further, plaintiff's products and defendant's counterfeit goods compete in the same consumer and geographic (Guam) market.

As discussed above, plaintiff's marks are inherently distinctive and strong; under the trademark laws, they are afforded the widest gambit of protection from infringing uses. Finally, the sale of the counterfeit items by Lin's Jewelry is not innocent or inadvertent. Defendant admitted that the items it sold are "copies" of the genuine Louis Vuitton products and that they are "not real." D.

-7-

Case 1:05-cv-00010   Document 3   Filed 03/14/2005   Page 7 of 15

Perez Affid.; M. Dizon Affid. It is obvious that defendant intended to appropriate plaintiff's customers and to trade on plaintiff's goodwill.

The actions of Lin's Jewelry are plainly in violation of the Lanham Act. Gucci America, Inc. v. Action Activewear, Inc., 759 F. Supp. 1060, 1063, 19 U.S.P.Q.2d 1448 (S.D.N.Y. 1991) (operators of retail clothing shops, by offering for sale counterfeit Gucci and Polo sportswear, were guilty of trademark infringement and unfair competition). Based upon the overwhelming evidence, defendant's admissions that they knew they were selling counterfeit goods, the incontestability of plaintiff's registered trademarks, and the high probability of confusion, plaintiff has established a strong likelihood of success on the merits of its trademark infringement and unfair competition claims against defendant. Metro Pub., Ltd. v. San Jose Mercury News, 987 F.2d 637, 640, 25 U.S.P.Q.2d 2049 (9th Cir. 1993) (once plaintiff has demonstrated likelihood of confusion, irreparable harm is presumed); In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979) (ordering the district court to enter an ex parte temporary restraining order due to the likelihood of product confusion).

### C. An Adequate Remedy at Law is Unavailable.

A legal remedy is inadequate if the plaintiff's injury is a continuing one, where the last available remedy at law would relegate the plaintiff to filing a separate claim for damages each time it is injured anew. Northeast Women's Ctr., Inc. v. McMonagle, 665 F. Supp. 1147, 1153 (E.D. Pa. 1987). Unless a restraining order is granted, plaintiff here would be required to file separate claims for damages each time the defendant sold counterfeit goods bearing the trade names or trademarks of plaintiff. Because plaintiff would receive legal relief only through a multiplicity of lawsuits, a restraining order is warranted. Ecolab, Inc. v. Paolo, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991). Further, a loss of customer goodwill, which is suffered by plaintiff in this case, constitutes

immeasurable damage, thereby rendering alternative remedies at law unavailable. Basicomputer Corp v. Scott, 973 F.2d 507, 512 (6th Cir. 1992).

### D. Unless Lin's Jewelry is Enjoined Immediately, Plaintiff Will be Irreparably Injured.

Plaintiff is irreparably harmed by defendant's actions in several ways. First, the damage caused by confusion to the public is incapable of precise financial measurement given the intangible nature of plaintiff's goodwill. Communications Satellite Corporation v. Comcet, Inc., 429 F.2d 1245, 1253 (4th Cir. 1970) cert. den. 400 U.S. 942 (1970).

Second, a trade name or trademark is a badge. It represents to the world the identity of the source or origin of the goods that bear it. Plaintiff's reputation rests with its trademarks. When defendant uses the trademarks of plaintiff, customers associate defendant's goods with plaintiff. If defendant continues to use plaintiff's trademarks, defendant will trade upon and tarnish plaintiff's inestimable and well-earned reputation. Where reputation is at stake, irreparable injury for the issuance of a preliminary injunction is presumed. Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., 428 F.2d 379, 381 (2d Cir. 1970); RWT Corp. v. Wonderware Corp., 931 F. Supp. 583, 591 (N.D. Ill 1996) (irreparable harm usually presumed in trademark infringement cases).

Third, customers have bought and will continue to buy defendant's goods, believing that they are connected to or associated with Louis Vuitton. Plaintiff therefor incurs an enormous loss of revenue which is difficult to ascertain. Given the illicit nature of counterfeiting, it is unlikely that accurate records exist to establish the actual dollar amount lost by plaintiff. In McLeod v. Hosmer-Dorrance, Inc., 1976 U.S. Dist. LEXIS 12289, 192 U.S.P.Q. 683, 686 (N.D. Cal. 1976), for example, the court noted that a defendant's use of the plaintiff's trademark "supports a finding of irreparable injury in the sense that it may not be fully compensable in damages."

Finally, by depriving plaintiff of the ability to control the nature and quality of defendant's goods, defendant inflicts serious harm upon plaintiff. This deprivation, without more, constitutes irreparable injury. Kraft General Foods, Inc. v. BC- USA, Inc., 840 F. Supp. 344, 351, 29 U.S.P.Q.2d 1919 (E.D. Pa. 1993) (trademark owner's lack of control over trade reputation constitutes irreparable injury supporting injunction).

### E. The Balance of Equities Weighs in Favor of Plaintiff to Enjoin Defendant's Activities.

Plaintiff's goodwill, reputation, loss of trade and control over its products are irreparably injured by defendant's sale and distribution of counterfeit goods bearing trademarks identical to those of the plaintiff. In addition, the consuming public suffers irreparable injury as a result of the confusion and deception caused by defendant's sale of the counterfeit goods. The inconvenience to defendant, if any, is merely economic, consisting of lost sales from their counterfeit goods. This is a loss which the defendant "may justifiably be called upon to bear." Corning Glass Works v. Jeannette Glass Co., 308 F.Supp. 1321, 1328 (S.D.N.Y. 1970), aff'd. 432 F.2d 784 (2d Cir. 1970). Moreover, whatever other equities defendant might have, they have been vitiated by their flagrant and admittedly unlawful acts in selling the counterfeit goods. In weighing defendant's possible economic loss against the irreparable harm to plaintiff and the consuming public, it is indisputable that the balance of equities weighs heavily in plaintiff's favor.

### F. The Issuance of a Restraining Order is in the Public Interest.

The consuming public has the right to be free from the deception and misbranding which results from unfair competition by defendant's unlawful and unauthorized use of plaintiff's trade names and trademarks. Stahly, Inc. v. M.H. Jacobs Co., 183 F.2d 914, 917 (7th Cir. 1950) cert. den. 340 U.S. 896 (1950) (trademark laws and the law of unfair competition are concerned with the

protection of the public from fraud and deceit). Guam consumers and visiting tourists are deceived by defendant's use of plaintiff's trademarks while defendant trades upon plaintiff's reputation in selling shoddy, inferior, and defective goods to consumers. Further, as a result of trademark infringement by defendant, the consuming public is denied the benefit of its bargain. Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1275 (9th Cir. 1982).

Guam has a strong, overriding interest in preventing illicit trafficking of counterfeit goods. Guam statutes prohibit defendant's unlawful activities in order to protect consumers here. See 9 G.C.A. § 47.10 et. seq. ("Trademark Counterfeiting Act"); G.C.A. § 32201, et. seq. (deceptive trade practices). It is therefore in the public interest for an immediate restraining order to issue to protect consumers from being defrauded by the defendant's sale of counterfeit goods.

In sum, all of the requirements for issuance of a restraining order are met here, and an order should therefore issue immediately.

## II. AN EX PARTE SEIZURE ORDER IS WARRANTED IN THIS CASE AND IS THE ONLY MEANS OF ADEQUATELY PROTECTING PLAINTIFF'S TRADEMARK RIGHTS.

Plaintiff requests that the court issue a seizure order against defendant without notice, permitting the United States Marshal, or other peace officer, to seize the counterfeit Louis Vuitton merchandise and related business records in the possession, custody and control of defendant in order to preserve the evidence of defendant's illegal activities. 15 U.S.C. § 1116(d) authorizes this Court to issue such an ex parte order. This Court has previously issued ex parte seizure orders in other trademark infringement actions, recognizing that in the absence of ex parte relief, counterfeiters could destroy, transfer or conceal their counterfeit goods and any records documenting their unlawful activities. See authorities cited in footnote 1, supra.

-11-

15 U.S.C. § 1116(d)(4)(B)(i) - (vii), as amended, imposes certain conditions to be met prior to issuance of an ex parte seizure order. The Court must find that: an order other than an ex parte seizure order is inadequate to achieve the purposes of the Lanham Trade-Mark Act; plaintiff has not publicized the requested seizure; plaintiff is likely to succeed in showing that the defendant used counterfeit marks in connection with the sale of goods; immediate and irreparable injury will occur if such seizure is not ordered; the matter to be seized will be located at the place identified in the application; and the defendant would destroy, move, or hide the goods if plaintiff provided notice to them.

All of those requirements are met here. An order other than an ex parte seizure order would be inadequate here. Providing notice to defendant of the request for injunctive relief and seizure order would effectively deny plaintiff any meaningful remedy. A restraining order, by itself, will not prevent the sale or movement of the counterfeit goods, since the defendant may have ready access to other locations or other sellers to which it can transfer the goods, or it can simply destroy or conceal the goods. Lured by the prospect of substantial cash profits, counterfeiters have shown little, if any, respect for court orders. See, e.g., Vuitton v. White, 945 F.2d 569, 575 (3d Cir. 1991) (counterfeit merchandise sold despite an outstanding permanent injunction against some of the defendants). If the defendant violates the restraining order, the disappearance of counterfeit goods leaves this Court and plaintiff without an effective remedy to identify the violators or prove their violation.

Plaintiff has not publicized the requested seizure. Plaintiff has provided overwhelming evidence that defendant has not only used, but has admitted sale of, counterfeit Louis Vuitton marks in their sale of infringing goods.

-12-

Immediate and irreparable injury will occur if the seizure is not ordered. Potential damage to reputation and likelihood of confusion constitute irreparable injury. Opticians Ass'n v. Independent Opticians, 920 F.2d 187, 195-96 (3d Cir. 1990). In addition, the distribution of infringing merchandise constitutes irreparable injury. In re Vuitton et Fils S.A., supra., 606 F.2d at 4; Helene Curtis Industries. Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332-33 (7th Cir. 1977) cert. denied 434 U.S. 1070 (1978). Once defendant has the opportunity to "unload" its counterfeit goods or dispose of their records, it will be virtually impossible to determine the identity of defendant's suppliers, customers, or the extent of their unlawful activities. The counterfeit goods are the best evidence of defendant's violation of the trademark infringement laws and must be preserved in order to prosecute this action.

Plaintiff has provided the exact locations of the stores where the counterfeit goods and business records will be seized. A. Arriola Affid.

As established in Part IE, above, the harm to plaintiff in denying their application for an ex parte seizure order far outweighs the harm to the defendant. Moreover, any legitimate interests of the defendant are protected by the statute's requirements that plaintiff shall post adequate security for the seized goods, 15 U.S.C. § 1116(5)(D); that defendant shall be protected from any publicity regarding the seizure, 15 U.S.C. § 1116(6); that a protective order may issue regarding confidential information contained in the seized records, 15 U.S.C. § 1116(7); that the seizure order shall be sealed until defendant have the opportunity to contest the order, 15 U.S.C. § 1116(8); that an expedited hearing be held to allow defendant to contest the seizure order, 15 U.S.C. § 1116(10)(A); and that if there is a wrongful seizure, defendant shall be entitled to relief, 15 U.S.C. § 1116(11).

Finally, due to the nature of the counterfeiters' illicit operations, it is apparent that defendant would destroy, move, hide or otherwise make the counterfeit goods inaccessible to the court if they

-13-

were given notice of plaintiff's application. A. P. Arriola Affid.; see Vuitton v. White, 945 F.2d at 575 (notice of seizure order will cause defendants to conceal or destroy counterfeit merchandise). As one court noted in granting a temporary restraining order without notice to the seller of counterfeit goods, "[i]f notice is required that notice all too often appears to serve only to render fruitless further prosecution of the action." In re Vuitton et Fils S.A., 606 F.2d at 4.

Issuance of ex parte seizure orders in trademark counterfeiting cases is now so well established in the federal courts that one court observed in Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. and Fila Sports, Inc. v. Bruce Kitchen, et al., 548 F.Supp. 248, 249 (S.D. Fla. 1982): "the weight of authority around the country appears to favor the granting of ex parte seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." Plaintiff wish simply to maintain the status quo by preventing the disappearance of the counterfeit merchandise and the records relating to the purchase and sale of such counterfeit merchandise. All of the requirements for an ex parte seizure order have been met here and plaintiff requests that one issue immediately.

### III. THE FILE IN THIS ACTION SHOULD BE TEMPORARILY SEALED.

Plaintiff also requests that the Court issue an ex parte order temporarily placing the pleadings, papers, files and orders in this action under seal. This order is requested because defendant may learn of the filing of this action before the Temporary Restraining Order and Seizure Order sought by plaintiff may be served upon defendant. Moreover, 15 U.S.C. §§ 1116(6) and 1116(8) provide for a secrecy order to protect defendant from harm caused by premature publicity of the Temporary Restraining and Seizure Order.

In order for the ex parte seizure order to be effective, defendant must not be apprised in advance of the filing of plaintiff's complaint, motion, or orders of the court. If defendant learns of

-14-

the action or orders of the court, it is likely to remove, destroy, or hide the counterfeit goods, thus defeating the remedy sought by plaintiff. This Court has previously issued similar orders sealing the files in other cases. See authorities cited in footnote 1, supra. Accordingly, plaintiff respectfully requests that the Court temporarily seal the record in this case until the defendant is served or until the date set for hearing on the order to show cause, unless otherwise provided by the court.

## CONCLUSION

For all of the foregoing reasons, plaintiff Louis Vuitton Malletier respectfully requests that the Court grant an ex parte order to show cause why the court should not issue a preliminary injunction restraining the defendant and others acting in concert or participation with them, from continuing to infringe the registered trademarks of Louis Vuitton; an ex parte order temporarily restraining and enjoining defendant, and others acting in concert or participation with it, from committing further acts of infringement and from disposing in any manner any goods bearing plaintiff's registered trademarks which are in its possession, custody or control; an ex parte seizure order directing the United States Marshal or peace officers, to seize and impound defendant's counterfeit Louis Vuitton merchandise and related business documents; and an ex parte order that the documents, pleadings and other papers in this case be filed under seal.

Dated this 14th day of March, 2005.

                                              **ARRIOLA, COWAN & ARRIOLA**
                                              Counsel for Plaintiff LOUIS VUITTON MALLETIER

BY: _____
      **ANITA P. ARRIOLA**